IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JESSICA L. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19-1289-TMP |
| ) | |
| ANDREW M. SAUL, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER REVERSING THE DECISION OF THE COMMISSIONER AND
REMANDING CASE PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)**

Before the court is plaintiff Jessica L. Taylor's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34. The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 8.) For the reasons below, the decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

**I. FINDINGS OF FACT**

On April 21, 2017, Taylor applied for disability insurance benefits under Title II of the Act. (R. 161.) Taylor alleged disability beginning on July 29, 2015, due to fibromyalgia. (R. 175.) Taylor's application was denied initially and upon reconsideration by the Social Security Administration ("SSA"). (R.

94; 99.) At Taylor's request, a hearing was held before an Administrative Law Judge ("ALJ") on October 3, 2018. (R. 24.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Taylor was not disabled from July 29, 2015, through the date of her decision. (R. 10.) At the first step, the ALJ found that Taylor had not "engaged in substantial gainful activity since July 29, 2015[.]" (R. 12.) At the second step, the ALJ concluded that Taylor suffers from a single severe impairment, fibromyalgia. (R. 12.) At the third step, the ALJ concluded that Taylor's impairment does not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13.) Accordingly, the ALJ had to then determine whether Taylor retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Taylor] has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b). Specifically, [Taylor] is able to lift and carry 20 pounds occasionally and 10 pounds frequently. [Taylor] is able to sit, stand[,] and walk 6 hours total each.

(R. 13.) The ALJ then found at Step Four that Taylor "was able to perform past relevant work as an air filter assembler and products assembler." (R. 15.) Accordingly, on January 10, 2019, the ALJ issued a decision denying Taylor's request for benefits after

-2-

finding that Taylor was not under a disability because she retained the RFC to return to past work. (R. 15-6.) On November 20, 2019, the SSA's Appeals Council denied Taylor's request for review. (R. 1.) The ALJ's decision then became the final decision of the Commissioner. (R. 1.)

On December 12, 2019, Taylor filed the instant action. (ECF No. 1.) Taylor argues that: (1) the ALJ failed to apply SSA policy regarding fibromyalgia claims to her case; (2) the ALJ improperly evaluated her statements about the severity and nature of her symptoms; (3) the ALJ improperly evaluated the medical opinion evidence; and (4) the ALJ improperly evaluated lay witness opinions about the scope of her activities of daily life. Because the court concludes that reversal and remand is warranted based on Taylor's first argument, it does not reach her other arguments.

## II.  CONCLUSIONS OF LAW

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs.,

893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy"

>     means work which exists in significant numbers either in
>     the region where such individual lives or in several
>     regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity

criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C.    Fibromyalgia**

Taylor's first argument is that the ALJ failed to apply SSA policy regarding fibromyalgia claims to her case. Some context regarding fibromyalgia illuminates the dispute. "Fibromyalgia,

also called fibrositis, 'is a medical condition marked by chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852, 860 (6th Cir. 2011) (quoting Stedman's Medical Dictionary for the Health Professions and Nursing at 541 (5th ed. 2005)). The illness has no known cause or cure. Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 434–35 (6th Cir. 2013). "[W]hen a claimant has a fibromyalgia diagnosis, objective medical evidence of the condition is rare." Gursky v. Colvin, No. 16-CV-2654-TMP, 2017 WL 6493149, at *9 (W.D. Tenn. Dec. 19, 2017). "Rather, fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 244 (6th Cir. 2007) (internal citations and quotations omitted). As a result, evidence of the severity of symptoms of fibromyalgia is almost entirely subjective. Minor, 513 F. App'x at 434–35. The severity of fibromyalgia symptoms can also vary significantly over time — people with fibromyalgia have good days and bad days. See Gursky, 2017 WL 6493149 at *9.

These unique features of fibromyalgia complicate the Social Security disability evaluation process. See Cooper v. Comm'r of Soc. Sec., No. 4:13-CV-11883, 2014 WL 4606010, at *15 (E.D. Mich. June 17, 2014), report and recommendation adopted, 2014 WL 4607960

(E.D. Mich. Sept. 15, 2014). Usually, examining objective medical evidence is a central part of how ALJs evaluate disability claims. See id. But because people with fibromyalgia usually have normal clinical results, objective medical evidence is "simply beside the point." Kalmbach, 409 F. App'x at 862. "[A]n ALJ errs when he or she discounts a plaintiff's complaints of fibromyalgia symptoms based on a lack of objective evidence and/or benign physical exam findings or test results." Partlow v. Comm'r of Soc. Sec., No. 2:18-CV-1702, 2019 WL 5257541, at *6 (S.D. Ohio Oct. 17, 2019), report and recommendation adopted, 2020 WL 247336 (S.D. Ohio Jan. 16, 2020). Likewise, an ALJ errs in rejecting a medical opinion about the severity of fibromyalgia because the objective medical evidence is normal. Kalmbach, 409 F. App'x at 862. Despite this, "a diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits." Stankoski v. Astrue, 532 F. App'x 614, 619 (6th Cir. 2013). On more than one occasion, the Sixth Circuit has quoted the Seventh Circuit's important observation that while "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working . . . most do not and the question is whether [the claimant in this case] is one of the minority." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996); Minor, 513 F. App'x at 434–35; Torres v. Comm'r of

Soc. Sec., 490 F. App'x 748, 754 (6th Cir. 2012); Vance v. Comm'r of Soc. Sec., 260 Fed. Appx. 801, 806 (6th Cir. 2008).

Because of the disease's unique features, the SSA has promulgated a Social Security Ruling ("SSR")[1] regarding fibromyalgia, SSR 12-2p. SSR 12-2p, 2012 WL 3104869, at *1. SSR 12-2p establishes special rules for how ALJs evaluate whether fibromyalgia is a severe impairment at Step Two. Id. at *3. The ruling also provides guidance about how to evaluate a claimant's fibromyalgia at later steps in the disability evaluation process. Id. at *4-6. As relevant here, it instructs that ALJs should be sensitive to the reality that "the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days'" and that "[w]idespread pain and other symptoms associated with [fibromyalgia], such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories." Id. at *6.

Taylor first argues that the ALJ was obliged to mention SSR 12-2p by name in her opinion. The court disagrees. SSR 12-2p is one of several SSRs that governs the evaluation of diseases with

---

[1]SSRs are "precedent[,] final opinions and orders[,] and statements of policy and interpretations" adopted by the SSA. 20 C.F.R. § 402.35. SSRs are binding on ALJs. Id.

-10-

unusual features. When it is "apparent that the ALJ was aware of the unique characteristics" of a disease governed by one of those SSRs, the ALJ need not cite the SSR in question to demonstrate his or her understanding of its principles. Shepard v. Comm'r of Soc. Sec., 705 F. App'x 435, 439 (6th Cir. 2017).

Despite this, the court does agree with Taylor's broader argument the ALJ did not take into account the unique features of fibromyalgia in evaluating Taylor's claim and thus ran afoul of SSR 12-2p. First, the ALJ relied extensively on Taylor's benign physical exam findings, including those related to muscle strength, in finding Taylor's subjective symptom complaints inconsistent with the record and in rejecting the opinion of Taylor's treating nurse practitioner. (R. 13-5) As discussed above, the Sixth Circuit has held that citing benign physical exam results to discount the severity of a claimant's fibromyalgia symptoms reflects a "fundamental misunderstanding of the nature of fibromyalgia." Kalmbach, 409 F. App'x at 861. In addition, the ALJ did not follow SSR 12-2p's instruction to be sensitive to the reality that fibromyalgia can wax or wane over time. Rather, the ALJ cited the fact that Taylor's medical records contained some doctor's visits in which she did not complain of ongoing symptoms as evidence that Taylor's description of her symptom severity was

-11-

not consistent with the record. (R. 14.) It is hard to square this analysis with an appreciation of fibromyalgia's tendency to wax and wane over time. "[T]he 'waxing and waning' of fibromyalgia should have been an explicit consideration in exploring any disparity between particular points in the record and [the claimant's] account." Riddle v. Comm'r of Soc. Sec., No. 17-10905, 2018 WL 822428, at *3 (E.D. Mich. Feb. 12, 2018). Finally, the ALJ did not give any indication that she considered whether exertional limitations based on Taylor's fatigue would be appropriate. In a typical case this would not be problematic; "Social Security regulations do not require the ALJ to provide a written function-by-function analysis in his opinion unless such analysis is necessary for a reviewing court to understand the bridge between the evidence and result." Storman v. Saul, No. 19-1152-TMP, 2020 WL 3542195, at *3 (W.D. Tenn. June 30, 2020) (internal citations, quotations, and alterations omitted). However, SSR 12-2p requires ALJs to give special attention to pain and fatigue related limitations. Furthermore, such attention is particularly important in this case because a vocational expert testified that a claimant with Taylor's occupational profile would be unable to find work that exists in significant numbers in the national economy if her fatigue required her to miss as little as two days of work a month.

(R. 54-5.); see also Hampton v. Comm'r of Soc. Sec., No. 16-CV-12135, 2017 WL 4236541, at *7 (E.D. Mich. Sept. 25, 2017) ("Indeed, the ALJ's failure to expressly consider the effect of [the claimant's] claimed fatigue and need for naps, as required by SSR 12-2p, was an especially consequential error because the vocational expert testified that if [the claimant] 'need[ed] to nap twice a day for an hour and a half,' that (along with her other limitations) would preclude her from finding any employment in the national economy.) Taken in conjunction with the errors described above, the ALJ's failure to discuss whether exertional limitations based on Taylor's fatigue would be appropriate supports the conclusion the ALJ did not apply SSR 12-2p to Taylor's claim.

The government argues that this misreads SSR 12-2p. "Most of the ruling provides guidance on how to establish a medically determinable impairment of fibromyalgia; that is, it describes the objective evidence that must be present before the ALJ can find fibromyalgia medically determinable at step two." (ECF No. 12 at 4.) The ruling also states that the same rules governing the evaluation of a claimant's subjective symptoms apply in fibromyalgia cases as in other cases and that "[a]s with any adult claim for disability benefits, [the SSA] use[s] a 5-step sequential evaluation process to determine whether an adult with [a medically

-13-

determinable impairment] of [fibromyalgia] is disabled." SSR 12-2p, 2012 WL 3104869, at *5. The government contends that since the ALJ found Taylor's fibromyalgia to be a severe impairment at Step Two and applied the standard regulation for evaluating subjective symptom severity and the standard five-step evaluation process, SSR 12-2p's requirements are satisfied. The government argues that the validity of the ALJ's determinations after Step Two should be evaluated under the substantial evidence standard, without regard to whether the ALJ took into account the unique features of fibromyalgia outlined in the ruling. The government cites Luukkonen v. Comm'r of Soc. Sec., 653 F. App'x 393 (6th Cir. 2016), in support of this proposition.

In Luukkonen, an ALJ issued a decision before SSR 12-2p was promulgated finding that a claimant's fibromyalgia was a severe impairment, but concluding that the claimant retained the RFC to perform work that exists in significant numbers in the national economy. Luukkonen, 653 F. App'x at 397. That decision was in part because the ALJ determined the claimant's self-reported symptoms were inconsistent with the evidence in the record, including the opinion of the claimant's own treating fibromyalgia specialist. Id. On appeal before both the district court and Sixth Circuit, the claimant argued that the ALJ erred because he ignored the

-14-

claimant's fibromyalgia diagnosis and failed to apply SSR 12-2p. Id. at 399. The claimant did not identify any specific way that the ALJ's opinion ran afoul of SSR 12-2p. Id. Unsurprisingly, the Sixth Circuit affirmed the ALJ. Id. The Sixth Circuit rejected the argument that the ALJ ignored the claimant's fibromyalgia diagnosis because it simply was not true; the ALJ found the claimant's fibromyalgia to be a severe impairment. Id. at 399 n.7. The Sixth Circuit also noted that, to the extent the claimant was attempting to challenge the ALJ's failure to discuss the specific criteria for determining if fibromyalgia counts as a severe impairment at Step Two outlined in SSR 12-2p, such an error would be harmless because the ALJ found the claimant's fibromyalgia was a severe impairment. Id. The Sixth Circuit went on to note that even if the claimant had raised a challenge to the ALJ's evaluation of the claimant's subjective symptom severity, the court still would have affirmed in light of the medical opinion evidence. Id. at 400.

Luukkonen has little relevance to this case. The claimant in Luukkonen did not raise any specific argument about how the ALJ misapplied SSR 12-2p after Step Two; Taylor has. The Sixth Circuit's ruling cannot be fairly read to speak to issues that were not before the court. See United States v. Lucido, 612 F.3d

871, 876 (6th Cir. 2010) (courts do not rule on matters *sub silentio*). Courts that have been squarely presented with SSR 12-2p's scope in later stages of the disability evaluation process have held that the ruling "requires the ALJ give special consideration to unique features of fibromyalgia[.]" Riddle, 2018 WL 822428, at *3. Luukkonen does not hold otherwise.

The ALJ's failure to take into account the unique features of fibromyalgia in accordance with SSR 12-2p was not harmless. An error by an ALJ is not harmless if "the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture[.]" Keeton v. Comm'r of Soc. Sec., 583 F. App'x 515, 524 (6th Cir. 2014) (internal citations and quotations omitted); see also Rabbers v. Comm'r Soc. Sec. Admin., 582 F.3d 647, 654 (6th Cir. 2009) (remand for a legal error is appropriate "if the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses."). It is hard to say whether the ALJ's ultimate conclusion would have been the same in this case without the mistaken conclusions described above. The court reverses and remands for failure to apply SSR 12-2p.

Because the court reverses and remands based on Taylor's SSR 12-2p argument, it does not reach her argument that the ALJ's evaluation of her subjective symptom severity was erroneous. The court nonetheless notes that the government has conceded that the ALJ erred in that analysis by overlooking Taylor's complaints of medication side effects and past efforts to seek specialist treatment. On remand, the ALJ should take into account those facts in the subjective symptom analysis.

### III.  CONCLUSION

For the reasons above, the Commissioner's decision is reversed and remanded.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

July 10, 2020
Date
